No: 2633

Second Circuit

---

DUKE v. LOUISIANA HIGHWAY COMMISSION

---

(June 30, 1926. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

i. Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (I).

The finding of fact of the trial court that the plaintiff, an injured employee suing for compensation under the Workmen's Compensation Act, was able to earn as much after the injury as before the injury and therefore not entitled to compensation, being eminently correct, is affirmed.

Appeal from the Tenth Judicial District Court of Louisiana, Parish of Red River. Hon. John F. Stephens, Judge.

Action by H. L. Duke against Louisiana Highway Commission.

There was judgment for plaintiff for a small amount and plaintiff appealed.

Judgment affirmed.

Nettles & Bethard, of Coushatta, attorneys for plaintiff, appellant.

W. C. Randolph and W. M. Barrow, of Baton Rouge, attorneys for defendant, appellee.

ODOM, J. Plaintiff was employed by the Louisiana Highway Commission as a common laborer and received compensation of $10.50 per week.

On January 24, 1925, he was injured by having one of his legs broken. He brought this suit for compensation under Act 20 of 1914 and amendments for 65% of his wages for 400 weeks as for total permanent disability. He was awarded compensation for twenty weeks and was allowed $47.50 for medical expenses, subject to a credit of $5.98 already paid, and he has appealed.

## OPINION

Plaintiff, at the time he was hurt, was operating a grader for the Highway Commission in the building of a public road in the Parish of Red River and was receiving compensation of $10.50 per week. On January 24, 1925, he was injured by having one of his legs broken. He was confined to his bed for eight weeks, after which he got up and for a while had to use crutches to enable him to walk. On June 22 he resumed work for the same employer at the same wage and continued to work regularly until about November 15, when he quit work of his own accord. On November 20 he filed this suit for compensation

for twenty weeks, alleging that he was totally disabled for that length of time, and further alleged that he was entitled to compensation for an additional 100 weeks under Clause (e) of Subsection 1 of Section 8 of the Act, on account of the permanent impairment of the use of his leg.

Defendant filed answer on November 25.

On December 7 plaintiff filed a supplemental and amended petition in which he alleged that he was totally permanently disabled from doing work of a reasonable character, and asked for compensation for 400 weeks.

We find the following admission in the record:

"It is admitted in this case that the plaintiff was injured as alleged in the petition and that he was engaged in a hazardous occupation as contemplated by the Workmen's Compensation Act of the State of Louisiana. that the sole issue before the court is the extent of the injury and the extent to which he is entitled to recover under the provisions of the Workmen's Compensation Act."

All the evidence shows that on June 22 plaintiff resumed his labor for the defendant and that he worked regularly and continuously up to about November 15. A portion of the time he received 17½ cents per hour, which was the same pay he received prior to the injury, and that later on defendant increased the wages of its common laborers to 20 cents per hour and that plaintiff received the same pay as other laborers.

While plaintiff admits that he worked and drew the pay regularly and that he finally quit work because he wanted to do something else and not because he was unable to continue, yet he says he worked

because he had no means to maintain himself and because he was told by Mr. Bailey, who was in charge of the work, that unless he worked he could not draw his pay (we assume he means compensation for the time he was disabled on account of the injury); that the injury caused him constant pain, and that from the time he went back to work in June until he quit in November it was necessary for him to stop frequently to rest.

He testified that at times his leg hurt at night after a day's work and that he uses Sloan's liniment on it to relieve the pain.

He says, further, that he is not able to do any work of a reasonable character.

To corroborate his testimony, he called Willie Vickers, a colored man who worked with him. Vickers testified that plaintiff complained that his leg gave him pain and that he had to rest frequently.

Plaintiff also called Mr. McDowell, who was foreman of the work gang up to September 15. Mr. McDowell testified that plaintiff frequently complained and had to stop and rest and that he gave him light work to do.

Plaintiff also called Dr. Carlisle, who attended him and set his limb immediately after it was broken. Dr. Carlisle testified that he did not think plaintiff was able to go back to work on June 22 and that he told the superintendent so. However, he gave plaintiff a release, because both the superintendent and plaintiff requested him to do so. He says the superintendent asked him to release plaintiff so that. he could go to work but that he refused to do so until requested by plaintiff himself. He saw no more of plaintiff until the day of trial, when he heard him testify.

The doctor was not asked to make an examination of plaintiff's leg, although he stated that he had observed the condition of the leg and observed that there was slight enlargement of the locus of the wound and some evidence of callous. He stated that in his opinion plaintiff was not then able to work all day if the work involved standing on his feet. But it seems that his testimony was based mainly on plaintiff's testimony that standing caused him pain. He stated that very probably the nerves were involved in the healing, which caused the pain, and that possibly plaintiff's condition would be as bad a year from then as it was on that date.

There is no suggestion that there was not good union of the bone, and, as stated, the doctor's opinion as to plaintiff's inability to work seems to have been based upon plaintiff's statement. He had not seen or treated him from the date on which he discharged him in June, 1925, until the date of the trial on January 11, 1926.

As against the testimony of Vickers, plaintiff's fellow worker, and McDowell, the foreman, to the effect that plaintiff complained frequently and that he occasionally sat down to rest on account of his leg, we have the testimony of Mr. J. M. Sims, district superintendent of road construction, who had general supervision of the work in some five or six parishes, including Red River. Mr. Sims testified that he inspected the work where plaintiff was employed once or twice a week during the time from June to November and saw plaintiff each time and that plaintiff's work was satisfactory and that plaintiff made no complaint to him. He was on the work but a few moments during each visit and probably paid but little attention to the individual laborers, and for that reason was not in position to give any definite information as to plaintiff's condition.

However, no complaint was made to him and so far as he observed plaintiff was working as other hands were.

We also have the testimony of Mr. Frank Strother, the foreman on the work, who seems to have taken McDowell's place when McDowell quit on September 15. Strother says he saw plaintiff every day—that some days he was with him all day—that he was with him every day from the time he went on the work in September to the date on which plaintiff quit in November, except two days when he, Strother, was operating the grader, and that plaintiff worked just as other hands did, distributing and scattering gravel, leveling the road, etc., and that at no time did plaintiff register any complaint to him on account of being tired or that his leg gave him pain, and that he did not at any time see him "lounging" on the job; and, further, that plaintiff did his work satisfactorily and without complaint.

Mr. McDowell and Mr. Strother are the two men who had occasion to observe the work of plaintiff, as they were each in turn foremen of the work gangs composed of plaintiff and others; and, giving full credit to the testimony of McDowell, it may be true that plaintiff did complain to him; but McDowell left the work on September 15 and, therefore, plaintiff's complaints were made prior to that time and probably immediately after he resumed work on June 22. McDowell does not say just when the complaints were made. Mr. Strother observed plaintiff's work for two months after McDowell left, and he says that plaintiff did not lose any time or register any complaint during these two months.

Our conclusion, therefore, is that plaintiff's condition had improved to such an extent that he was able to work without discomfort during the time Strother observed him.

Plaintiff was asked:

"Now, does it pain you; does your leg pain you when you try to work?"

And he said:

"Yes, sir, it does; but not so bad as it did to start with."

We have no doubt that his leg did give him pain when he first tried to work. That is natural. But we have no doubt that his condition has so improved that he is now, and was on the date of the trial, able to do work of a reasonable character and that, as found by the district judge, he was suffering no disability at all.

Counsel for plaintiff lay stress upon the testimony of Dr. Carlisle. The opinion of physicians is not to be disregarded in matters of this kind, and if the doctor had made a thorough examination of plaintiff's leg at the time of the trial and had stated that the union was bad or that the leg was misshapen, or if he had given any other reason why it should cause disability, we would be disposed to give great weight to his opinion. But he merely says that the leg is slightly enlarged and that there is some evidence of callous; all of which is but natural. He heard plaintiff testify that his leg was sore and tender and was asked:

"Do you consider him, the way he describes the matter, permanently disabled at the present time?"

And he answered:

"Yes, sir, at the present time."

He was therefore not giving voice to his own opinion based upon an examination,

but was giving an opinion based upon what plaintiff said.

The testimony of plaintiff and his witnesses that he was suffering disability at the time of the trial is not sufficient to overcome that of Mr. Sims and Mr. Strother that he made no complaint to them, and the further fact, undisputed, that he did work and drew the same and better wages from June 22 to November 15 and finally quit of his own accord, not because he could not work but because the work was too far from home and that he intended to quit.

Counsel for plaintiff say that the fact that an injured employee forces himself to work, or that the employer gives him light work and wages through sympathy, should not be so construed as to bar recovery; and they cite Norwood vs. Lake Bisteneau Oil Co., 145 La. 823, 83 South. 25, and Hulo vs. City of New Iberia, 153 La. 284, 95 South. 719, and decision of this court in support of that theory.

Our Supreme Court and this court have held that an employee's right to recover compensation is based, not upon what he does earn but upon what he is able to earn after the injury. Our holding in this case is based upon our finding as a fact that plaintiff not only has earned but is able to earn as much after as before the injury.

Finding no error in the judgment complained of, it is accordingly affirmed with costs.